Case number 24-1598. Red Lake Band of Chippewa Indians, a federally recognized Indian tribe appellant versus United States Department of Health and Human Services. Ms. Newgarden for the appellant. Ms. Neumeister for the appellees. Good morning, counsel. Due to unforeseen circumstances, Judge Henderson will not be joining us for this argument session, but we'll listen to the argument recording afterwards as part of our deliberations. You may begin now, counsel. May it please the court. The court below erred in upholding the agency's refusal to compensate the Red Lake Band for both depreciation and principal and interest under its self-determination lease. Principal and interest and depreciation are distinct costs arising from distinct causes and are incurred at different times. Principal and interest is a cost incurred in acquiring a capital asset, whereas depreciation is a subsequent expense that occurs when the asset Congress identified them as distinct costs in Section 105L of the Indian Self-Determination Act and in the parallel leasing provision in the Indian Health Care Improvement Act. The agency concedes that they're distinct concepts, and indeed, HHS acknowledges in the Medicare regulation that they are distinct costs. Finally, the Bureau of Indian Affairs, in its Section 105L leases, including one with the Red Lake Tribe, treats them as distinct costs. It might be distinct as a matter of technical auditing language, but in this case, they would reimburse the same underlying expense by the tribe, that is, the cost of getting this building. Either you get the principal and interest or the depreciation, which again is the value of the building. So how would they put aside technical accounting principles and tell me what distinctly depreciation would get you that isn't always already covered by the principal and interest? Well, the principal and interest would simply reimburse the cost of the acquisition. When the asset is used, there's a distinct cost because it's being used. This court has said so. I'm asking you in practicality, you acquired it for this service, and so if they essentially pay for the building, if we think of the principal and interest reimbursement, I know it's a little complicated in different parts here, but if you think of the principal and interest reimbursement as covering the costs of the building, and depreciation covers the cost of the building in pieces over time, are they both covering the cost of the building? I only in a most non-accounting sense. In a non-accounting sense. I know, but I'm asking you in a real world sense. In a real world sense, no lesser in the private sector would lease a premises to a renter who says, you know what, I'll cover the costs that it took to provide this facility for me to use. No private lesser if they would already get paid for the cost of the entire building to build it in the first place. If the U.S. government built the building, they could rent it out without asking someone for both principal and interest and depreciation. But no renter goes in and pays for both of those. Yes, lessors pay that, lessees pay that all the time, your honor. In the private sector, every private lessor that's out there is going to get reimbursed for cost of acquisition, cost of depreciation, and they'll get a profit too. When the federal government leases from private lessors, it's paying all of that. It doesn't pay the tribes a profit because that's one of the components. But this is already the government's building. It's not the government's building, your honor. If you're getting principal and interest, they're paying for the building. The government pays for a lot. I'm telling you to use it, and then you're only getting reimbursed for the cost of the use of the building, the facility. No, if you buy planes from Boeing, Boeing has capital costs and depreciation too. Those are built into it, and it's not the case that the government owns those. The fact that the Congress has said... Congress has said... Excuse me, isn't there a difference here that the government, by paying principal and interest, is effectively buying the building? They're paying the cost of acquiring the building. No, I don't agree with that. When they reimburse you for principal and interest, they are not... They're not acquiring the building, no, your honor. I'm not asking for a title thing. I'm asking that they're paying for the cost of the building. Congress said it's a paying for the cost. When you deduct principal and interest, are they not paying for the cost of the building? No, they didn't. In the case here, they didn't pay for the entire cost. No, they didn't. Okay, we're talking about the percentile here, so just assume... I know there were some percentiles that were different here, but just assume we have a building that is entirely financed by the government. All right. Okay? All right? And then you all use it to deliver a service, an important service. Right. But they have paid... When they reimburse you for all the principal and interest, they are paying the cost of that building being there and being used. They are, but they're not paying you for your... Coming up with the lease, getting the financing, supervising the construction, operating the building, or any of those things. All they're paying is principal and interest. Financing is either interest, or if you're talking about time, that's not on the list of things that Congress reimburses. No, it isn't, but depreciation is, Your Honor, along with principal and interest, one right after the other. Excuse me. Depreciation is not the cost of the trouble of getting financing for a building. No, it's not, Your Honor. Okay, then. That's my point. So you mentioned that, that they're not paying for that, but that's beside the point, because Congress doesn't authorize them to pay for that. Congress has authorized various expenses here, and they've twice authorized both principal and interest and depreciation. And because of the arbitrary position of the agency that these are somehow duplicative, because Congress hasn't called them duplicative, Congress didn't put a duplicative limitation in the statute. They're refusing to pay for both here, even though BIA does. There's the Indian canon of construction, which is now, since 2020, baked into the Self-Determination Act itself. How can it possibly be consistent with that, to have the BIA paying for both, and IHS refusing to do that? Further, in 2020. If you built a building today, the government paid for principal and interest on your loan. Let's say you borrowed the full amount for the building. And by the time 39 years have passed, the full interest and loan, you've paid your creditor the full amount of interest and principal. And the government has reimbursed you the full amount of interest and principal. And then after 39 years, the building is dilapidated, it's not usable anymore. You build a new building. You once again take out a loan that has principal and interest. And the government, once again, going forward, reimburses you for your principal and interest. And on and on and on and on. You repeat this every 39 years. It seems like there, you're out the principal and interest, but you then get reimbursed by the government for the principal and interest. So you come out even. So far, so good. You come out even. And then now let's say a different hypothetical. Everything I just said, but for those first 39 years, not only are you getting principal and interest, you're also getting depreciation back. And then at 39 years, after the depreciation is fully depreciated, you build a new building. And then once again, you get principal and interest, plus you get depreciation. It seems like you're getting paid twice every 39 years to build a building that you only need reimbursement for once. No, because if you're the renter, if you rent a place and you pay off and your rent is set equal to the mortgage, you as the renter don't own it. And what lessor do you know, Your Honor, respectfully, that would lease to you precisely at a rent that's set equal to what their principal and interest is, assuming they got 100% financing, which they didn't. And I understand analogies to the private sector. I think there are a lot of things here that are different than private sector. Usually when a person in the private sector wants to build a new building, they have to pay for the new building. The government doesn't reimburse them. The government didn't reimburse them here? This is a different situation. The tribe went out and got a loan. The tribe, like a private party, went out and got a loan. But unlike a private party, they will be reimbursed for the principal and interest on that loan by the government. A private party is reimbursed through the rent that it charges, Your Honor. The rent's going to include all of those components. They have to go find a rent. The government doesn't just pay them for their costs. The landlord, the renter, is there to make a profit. The tribe is not supposed to be making a profit off of this. It's supposed to be... But it's entitled to both. Congress has said it's entitled... That's the difference. That's why your landlady or landlord, when you're renting an apartment, is going to charge more than just their principal and interest because they're there to make a profit. You're not. To do it the way that IHS is doing it, rewrites it from a lease to a grant and aid program, which it is not. Congress has called it a lease. Congress has twice done that, both in the Health Care Improvements Act and in the Self-Determination Act. And it's twice said, Congress has said this, that you're entitled to both principal and interest and depreciation. They didn't say and or depreciation. Can I ask, what work does the reserve fund do? I know there's... That's a separate cost category. No, I know that. That was created after the fact by regulation. I'm asking what work it does. It does... takes care of some of the fixtures, replacing some of the fixtures in the building and things like that. But it is not a substitute for the depreciation. Does it cover any costs that would normally be covered by depreciation? It was structured by IHS and BIA, which wrote the reg, to be something beyond depreciation, because they already had depreciation by the statute. The reserve for replacement was one of the additional cost categories that they created. So it's covering different costs. So there's no... Nothing that's covered by the reserve fund would otherwise be covered by depreciation? To my knowledge, no. And beyond that, Your Honor, that was not the claim that the agency made below. They didn't say it's duplicating what's in the replacement reserve. They said it's duplicating principal and interest. That's an example of something that the replacement fund covers that depreciation wouldn't. But either the replacement fund, the repairs to building and equipment, and operation and maintenance expenses, those three categories. Tell me what they cover that depreciation would not. Some of the fixtures in the building, Your Honor. There's the building itself. Building the facility... Isn't the wear and tear on fixtures part of depreciation? I'm sorry? Isn't the wear and tear of sort of the... First of all, it's replacement of facilities. I don't think that's replacement. I would assume replacing fixtures might be repairs to the equipment. But contributions reserved for replacement of facilities, I assume, would not be the... No, Your Honor. I think it goes... I think that there are distinctions between them. You know, the facility... Overlap, maybe, between replacement of facilities, repairs to building and equipment.  When you build a health care center, you've got to have various equipment in it. You've got to repair it, and you've got to replace it. So that would be covered by repairs to buildings and equipment. Yes. Well, repairs would cover repairs, wouldn't necessarily cover replacement. No. All right. Operation and maintenance expenses. Would maintenance expenses include having to replace something? Within the building, but not the building itself. All right. So then replacement of the facilities, you're saying, is when part of the building itself wears down. I'm saying it could be... Or machinery within the building or things. I thought you just said machinery. So replacement of facilities is different than repair of equipment. Unless you're agreeing that there's just some overlap between all these categories. Your Honor, I think that they are distinct. If you've got an x-ray machine in there, you've got to repair it. You've got to operate and repair it. If the windows break down, you need to replace the windows. Would you use the contribution to the reserve for replacement of facilities? Or would you use maintenance expenses, operation and maintenance expenses, or repairs to building and equipment? Which of those would that be? I don't know, Your Honor. How can you know that the reserve fund and depreciation are not sometimes duplicate? Well, because the agency structured it to be a non-duplicative cost. Or if they are sometimes duplicative, then that's why they've got the anti-duplication provision in there. But the agency didn't assume. Some of these things on this, the regulatory list here of reimbursement things, some of them can be or will be duplicative of each other. I mean, they can overlap. There's some of these categories we've just now been talking about. When the agency added the additional categories, Congress specified five. Now, my question to you, my question to you is, it sounds like you just agreed that some of the things on the list, A through I, can overlap with each other. It is possible that the ones, not the first ones, the ones that are statutorily enumerated, I do not agree can overlap each other. The ones that were added by the agencies may occasionally overlap each other. The agencies added those provisions and they added the anti-duplication limitation. But that anti-duplication limitation cannot be applied to the... In the statute, it talks about list things and adds other reasonable expenses that the secretary determines by regulation to be allowable. Is there a chance that some of those... So your view is that the other reasonable expenses have to not overlap with the other ones on the statutory list? Right, or each other, Your Honor. Yes, that's correct. So what counts as a reasonable expense that's not already on the statutory list? Your Honor, I believe we're on the same wavelength. I'm asking you for an example of something. What else could the secretary add? The statute already covers principal interest, depreciation, operation and maintenance expenses. Right. So what's off that list that would need to be covered by the secretary? Well, the secretary came up that they're now in the reg. I'm not a landlady. I'm sorry, Your Honor. I don't have... They're enumerated in 25 CFR 900 points. I know, but you said there can be no duplication between the things in the statute. So now I'm reading from the statutory list in 5324L.  And the statutory list is rent, depreciation, principal and interest, operation and maintenance expenses, and other reasonable expenses. And so you just told me that those statutory ones don't overlap at all. So I'm just trying to understand as someone who doesn't manage property like your client does, what are some of those... What other reasonable expenses was Congress envisioning that wouldn't be covered by the statutory list? I'm not sure that Congress had any in mind. It was leaving it to the agency. And the agency specified those in the reg in 900.70. But you said there can't be any overlap. No, I said as between the ones Congress has enumerated. That's what I'm talking about. That's what I'm talking about. There is no overlap.  And then... But then Secretary's regulations can have some overlaps. May overlap with either congressional ones or with the ones that... If it overlaps with the congressional one, then they can't pay twice. Right. Yes, Your Honor, that's our position. Okay. You agree that the non-duplication provision is consistent with the statute? As we noted in our brief, the anti-duplication provision is permissible with respect to the other expenses that the Congress authorized the agencies to provide for. But no, the anti-duplication provision cannot be used to limit the expenses that Congress authorized. And did you preserve that argument in the district court? We did, Your Honor. We argued that and it's cited in our brief. We cite in our brief to where it was argued to the district court. I saw a cite to... I saw a cite to a document in the district court, but I didn't see where in that document you preserved. We made the same argument that they cannot use... Can you show me? I don't have the brief with me right here, Your Honor. But I'm happy to submit that. I'm happy to submit it to the court as a letter. Well, the thing is, you did say page number, but I couldn't find it on that page. So if you resubmit the page, that won't help. I know. I'll be happy to submit in both the language, Your Honor. No, I can read all the language on the page. And is it that you don't have your appellate brief or you don't have the district court brief? I don't have the district court brief in here. You don't have it here with you at the table? No, Your Honor. All right. We'll give you a couple of minutes for rebuttal. Thank you. May it please the court, McKay Newmeister, on behalf of the federal government. The tribe here is seeking double recovery for the acquisition cost of its treatment center. $4.95 million in acquisition costs for the facility were financed by a loan. Now, IHS could either pay that $4.95 million in the form of depreciation or cover it in the form of principal payments on the loan. Our only point here is that IHS can't do both because it would be duplicative. Those are just two different ways of paying for the same acquisition cost. Now, there are various compensation elements that aren't contested here, like depreciation on the money that the tribe invested itself. That would total $856,000 at the end of the life of the facility. There is also no argument against the $3.27 million in interest payments that the government would pay over the life of the loan or the $4.95 million in principal payments that the government would pay. The only thing at issue is whether the tribe gets an additional $4.95 million over again with respect to depreciation. But nothing in the statute or regulation entitles the tribe to that kind of windfall. I'm happy to answer any questions that the court may have. How are you defining duplicative? Because it is pretty basic accounting principles that principal and interest and depreciation are two very different things. They're not the same thing, which is what the word duplicative means. They might end up capturing some overlapping costs, but they are not the same concept. And we agree with that, Your Honor. Those are not the concept. The concepts are distinct, but the costs that those different categories relate to are the same costs. And so looking at the statutory text, the secretary shall compensate tribes for the use of the facility. And so the question is, what cost elements are necessary to fully compensate for that use? And when you have different categories of compensation elements that are compensating for the same underlying costs, those are duplicative. To pay both of those would not be to compensate for the use. It would be to go beyond that, to give them double recovery and go beyond what is actually necessary to compensate for the use of this facility. I'm not sure duplicative is the right word for that. Duplicative means it's the same thing. Whereas you're saying sort of getting more back than the cost of use. But that doesn't mean that depreciation and principle and interest are duplicative. They're not. They're just they're very different measures, different ways of accounting them. They're just not duplicative. So in certain circumstances, they wouldn't be duplicative, Your Honor. But here they are, because here paying. I don't think they're duplicative. Maybe you're saying some of the money you're spending is duplicative, but those categories are not duplicative. They are not categorically duplicative. But to compensate both of those here. List of these categories for reimbursement by category. But in listing them, Your Honor, the Congress was just providing an illustrative list of the kind of compensation elements that might be appropriate for these leases under given circumstances. The language that Congress used is just such compensation may include and then a list of things. But we know that those things are not categorically mandatory because they're simply not applicable in every case. For instance, here there was no request for rent because there is no rent to be paid here. So we know that Congress was just providing a list that of the various things that could be paid under these leases, but they can only be paid to the extent that they are necessary to compensate for the costs incurred in the use of this facility. And here principal payments and appreciation payments on the 4.95 million are two different ways of paying for the same acquisition costs. So with come out to the same number mathematically, they do, Your Honor. So the principal payments are 4.95 million, and the amount of depreciation that the tribe is seeking is exactly 4.95 million because essentially it's paying for that acquisition over time. And that's what depreciation is. It's a means of allocating the acquisition costs of an asset over the useful life of that asset. And when you have principal payments, it's the same thing. The tribe has to pay the principal, pay the acquisition costs over the life of the loan in order to pay to acquire this facility. So if the government pays that acquisition cost and also pays depreciation, which allocates the cost over time, it's paying for the same thing twice. At the end of the day, those numbers will be exactly the same, 4.95 million. And there's simply no reason in the statute why that kind of windfall is required. It's helpful to step back and to think about this in terms of what would happen if there was a different means of financing. If the federal government paid rent on a brand new facility for the tribe for the entire life of the facility, the tribe would be out of pocket, nothing. The federal government would pay all of the rent costs. The tribe would have this new facility to use to provide these services for 40 years and have no out-of-pocket loss. Or if there were federal grant money or if the government just constructed a brand new facility and gave it to the tribe, the tribe has no out-of-pocket acquisition cost, no loans, no losses at all. It just has a brand new facility to use. And at the end of the day, it's gotten 40 years of use of this new facility. But under the tribe's theory, if they take out a loan, they're entitled to an additional $5 million. So at the end of the day, they're out-of-pocket, nothing. And they've gotten an extra $5 million just because they chose to finance a facility with a loan. The government gives them a facility. Reused in one of the covered forms. So they just hand them title to it. So they're the owners of it. They just got this nice gift from the government. They don't get depreciation on their gift, on their house. It's now their property. They don't, Your Honor. And that's clear under the regulation, 900.70, I believe. Where's that clear in the statute? Well, it's clear from the statute, Your Honor, because the statute is talking about the expenses of using the facility. That's exactly what depreciation is, an expensive use, not acquisition. I'm not sure why, if you all just gave them a gift. Depreciation is the way of accounting for the acquisition over time. When you purchase or build a brand new facility, you convert whatever your cash was, $5 million, into an asset that's worth $5 million. Over time, that asset loses value. So depreciation restores your acquisition costs to you, so that at the end of the useful life, we've accounted for the acquisition costs of that full facility. You get that back. The fact that the government is the one that paid the principal and interest. Imagine just a very wealthy person, very wealthy tribal member or whatever, dies and leaves to the tribe this building, this pristine new building, to be used for health care. So they've got a gift, but it's not from the government. Would they then be allowed to claim depreciation? So, Your Honor, that's a question that the agency hasn't answered in this case. If we look at the regulation- They're not. Well, if we look at the regulation, Your Honor, it specifically says, it's talking about depreciation with respect to if the federal government is the one paying. If the federal government is the one who's given them this facility, this grant facility, then the tribe doesn't get depreciation on it. And that makes sense because the tribe- I'm sorry, you're talking about- Where are you saying the regulation says? Yes, apologies, Your Honor. That's- B? That's B, yes. I'm asking, right, precisely, if there's no federal acquisition costs, do they get depreciation? And Your Honor, I- Because that wouldn't have any- It wouldn't. So I think the agency would have to look at that and say, okay, is this a cost to the tribe of using this facility? And I think likely the answer- I don't want to get out ahead of the agency. Likely the answer is yes, because of the tribe-  I think it likely is, Your Honor, because if the tribe has this facility, this value, it can dedicate that facility to different uses. If it's dedicating the facility that it has to the use of this program, then the cost to the tribe is the acquisition costs that it's- by dedicating it to the program. But that's essentially the same acquisition costs that are covered through these principal and interest payments. Now, as I said, if we paid- if the government paid through rent, if the government paid through a grant, at the end of the day, the tribe does not get a $5 million windfall. There's no reason in the statute why they should get an extra $5 million purely because they choose to finance it with a loan. And that creates incentives with respect to financing that cannot find any support in the statute. Ultimately here, the tribe is being reimbursed for all of its out-of-pocket expenses. The objective of this program is to enable the tribes to take on the management and operation of these health services. And so that is what these leases do. They're compensating the tribe for all of their out-of-pocket expenses. And so at the end of the day, the tribe can have this new facility, provide these services to their members, and suffer no out-of-pocket losses in connection with that. Our review's de novo, right? No deference to the agency. Yes, Your Honor. And if the agency just erred as a matter of basic accounting principles and calling depreciation and principle and interest duplicative, the reason it should have given is, in this case, there would be a windfall collection. And explained like you've been explaining here, but it's not because the two categories are duplicative. Because the regulation talks about those categories being duplicative. Are we bound by Chenery? Or does our de novo review mean we don't have any Chenery constraints? So, Your Honor, the argument that I'm making now is the same argument that the agency made. When we say these categories are duplicative and they're just different accounting concepts. Well, and I'd like to respond to that, Your Honor. I think with respect to these concepts, they are different in the sense that they don't always have to be talking about the same underlying cost. But in this circumstance, they are. They're not talking about the same thing. One is talking about the use and wear and tear on a building. The other one is talking, as you said, about acquisition costs. Those are just two completely different concepts. And Congress presumably knows what depreciation means. It shows up in a lot of statutes. So, Your Honor. It presumably knows what principal and interest are in an acquisition process. That shows up as well. And they aren't the same thing. Your point here is that in this case, the compensation would end up paying them twice the building. But that's not the same thing as saying that those categories of reimbursement are duplicative. As they're requested, in this case, they are. And I would just like to point, Your Honor. That's just a lot more. I want to get back to my original question, which is, if, it's just a question, if we thought the agency's explanation, these categories of payments are duplicative, it's wrong, just as a matter of straight up accounting principles and statutory tax and congressional usage of those terms. But the agency's concern about windfall was accurate. What do we do with Chenery, Your Honor? Do we have a review? So, I think that the court would simply be able to affirm on the basis that the agency explained. Because even if the agency was using the wrong label, this was the concern that the agency identified. And so, if the answer is clear that this is a permissible basis for denying these payments, because the statute does not contemplate windfall, it contemplates compensation, then we know what the agency's answer to this is. And the court could simply affirm, because it would be affirming for 2002, the exact same level of funding that was issued. I do want to just point, Your Honor, to two sources with respect to the statement that these are fundamentally distinct kinds of costs. I want to point, Your Honor, to a couple of sources describing them that shows that they actually are the same cost. So, one sort of basic source, IRS.gov, topic number 74, depreciation, says, quote, depreciation is the recovery of the cost of the property over a number of years. You deduct a part of the cost every year until you fully recover its cost. It's about allocating costs over time. Another quotation from the GAP accounting standards codification cited in the record at JA-121 in one of the declination letters or one of the negotiation letters, I forget which. But that accounting standards codification says that depreciation accounting is, quote, a system of accounting which aims to distribute the cost or other basic value of tangible capital assets, less salvage, if any, over the estimated useful life of the unit. And it says that, so it is essentially describing that these are depreciation is a means of allocating the cost of an asset, which refers to the acquisition costs, the initial value over the useful life of that asset. And so by paying depreciation, the government would be paying for the acquisition costs over the life of this facility. That's the same thing that the government does when it pays for principal payments. It's paying for that acquisition cost over time. And in this case, it's clear. Those two things are exactly $4.95 million. If these were distinct costs, you would expect that the wear and tear on the facility and what that cost is to the tribe, it would be some other number, but it's not because these really are just two ways of accounting for the same thing, the acquisition costs over time. If we were to disagree with your position and the district court's position, would these funds come out of the statutory program so you ended up having, in your view, to pay them twice, in their view, paying them for two distinct authorized categories. Those payments would just come out of the program, right? Not the judgment fund. I'm not certain. A lot of damages, Sue. This is in order to pay funds under the program. That's probably right, Your Honor. I'm not exactly certain. I'll just put you to the general statute for this is 25 USC 5331 talks about these actions, and it also talks about the extent to which the Contract Disputes Act comes into play under ISDA. I think that's probably right. I'm just not certain of the answer. Okay, because they just find this isn't a damages action. This is an action to obtain in order to make the payments required by the statute itself. Yes, I think the complaint might have framed it. It might have also included a request for damages in exactly this amount, but they were essentially requesting an order to the agency to be compensating them fully the way they're requesting. And for the reasons that we've explained, that would be inconsistent with the statute and the regulation. There's nothing in those sources that would permit this kind of windfall. It would go way beyond compensating them for the actual costs incurred for the use of this facility. If there's nothing further, we ask the court to affirm. Thank you very much. Okay, Mr. Gordon, we'll give you two minutes on rebuttal, please. All right. Thank you, Your Honor. I just have a couple of points I'd like to make. Number one, we skipped over the fact that the tribe invested over $850,000 of its own money into the acquisition of this building of this facility. And under the approach that IHS takes, it simply has repaid that money as depreciation over the course of 39 years. Meanwhile, it loses the time value of that money, which at 5% interest would be approximately $5 million. So the tribe, for its efforts in constructing and operating this facility, loses over the course of 39 years, about $4 million that it could otherwise have had under IHS's interpretation. Say that again. I'm sorry, you have to say it again. How they're losing $4 million? Your Honor, the tribe invested $857,000 into the construction of this building. It borrowed the remainder in the loan that you've heard about. But in terms of that $857,000, IHS, under its compensation, under the position it's taking, will reimburse the tribe for that as depreciation over the course of 39 years. So at the end of 39 years, they'll end up with their $895,000 again. But it'll be 39 years later, and they'll have lost the value that they could have obtained during that 39 years had they invested the funds elsewhere. Mr. Gordon, can you remind me where this is in your briefing? It's in our briefing at page 26 of the opening brief, footnote five, Your Honor. Footnote nine, I'm sorry, footnote nine. The whole point here is that you can't, I mean, you could have taken that building and used it for whatever you want and charged whatever you wanted. For it. But when you agree to work with the government to deliver a particular, use property for particular services, they want to make sure you break even. Well, this isn't breaking even. You just said you could have used it for something else, but then you wouldn't have gotten principle and interest if you used it for something else. If you'd used it for something else, the tribe would have had $5 million at the end of 39 years. As it is, they end up with the money. Your loan money repaid. Well, you... And you wouldn't have maintenance and you wouldn't have a reconstruction facilities fund. The other thing here is that the government has suggested that the tribe is gaming the system somehow because it's borrowing the funds rather than just investing it. I think we ought to be real here. We're talking about tribe. This is not a wealthy tribe. It's out in the middle of nowhere in Minnesota. And Congress is not so naive as to think that they were going to be investing their own funds. The money here, does it come from a general congressional appropriation for tribes? And then the agency just figures out which tribe gets what? The Congress appropriates money every year for the Indian Self-Determination Act, Your Honor. I guess maybe a more specific way of putting it is if you say that your tribe is a poor tribe... That's correct. I'm not here to disagree with you on that. If you get paid twice for what you should get paid for once, that means more money for you, but does that mean less money for another tribe? No, Your Honor, because our position is that all tribes should be compensated in exactly the same way under their leases. But what if that leads to more money required, requiring the agency to spend more money than Congress appropriated? Is that... Well, Congress... Then Congress can adjust it. Congress has put that mechanism into the Self-Determination Act itself. Congress could appropriate more, but if Congress doesn't appropriate more, then at a certain point, the fund runs out. And if you're getting more than the statute entitles you to, that's going to mean less money for other tribes. But our position here, the only way we get more money is if all tribes do. Our position is that this has got to be the uniform construction for all tribes that do leases. So we're not seeking anything that we're not trying to advantage ourselves at the expense of any other tribe. This is a uniform position we are taking here. I get that it's a uniform position, but if that uniform position leads to the agency needing to spend more money than Congress appropriated, the agency will have to... Then Congress will have to deal with it. Well, unless Congress does deal with it, the agency will give either some tribes or all tribes less than they are entitled to. Whatever the consequences would be, if we run out of funding for any agency, Your Honor, that would be the case. One other thing. Your Honor asked a question of the government that I'd like to take a shot at. And that was, what if you don't agree with the rationale that the agency gave? Although you think that there's some substance, but not the rationale that they gave. The statute itself addresses this. Indian Self-Determination Act in section 25 U.S. 5321 says in section B1 that whenever the secretary declines to enter into a self-determination contract, that the secretary shall state any objections, any objections in writing to the tribe. And then it provides further in B that the tribe can take an appeal. And then if you go down to section E1, it says that with respect to that appeal, which would be or a civil action, which is where we are now, the secretary shall have the burden of proof to establish by clearly demonstrating the validity of the grounds for declining the contract proposal or portion thereof. So the statute, Congress has placed the burden on the agency to articulate its objection and to uphold that objection, not some other objection. I'm trying to reconcile that and Chenery principles, which this would be consistent with, with our de novo review. What is our de novo review of the legal issue? Your de novo review is whether the agency has upheld the rationale that they gave, which was that these two costs are duplicative, which they're not, your honor, as your honor was pointing out, they're different concepts. And I don't see the windfall if the tribe is invested $800,000 and they're saying at the end of the day, it will get, it doesn't get principle and interest twice. They're simply saying it gets principle and interest and then it gets the depreciate, the appreciation of the value of the facility, which is $404,950,000. I mean, by my math, in this case, the tribe would come out about even with that. All right. Any further questions? I just have one follow up on the forfeiture question I asked. I did go back and look at the page. I think my question was about whether you think the duplication provision is consistent with the statute, the duplication provision is in 900.70. Am I right so far? Yes, your honor. Okay. And then I went back and looked at the page from the district court briefing that you cited to, and that page doesn't refer to 900.70. So how did you preserve a challenge in 900.70 without mentioning 900.70? Your honor, I don't have the page in front of me, and I don't have my brief with me, so I'm at a disadvantage. Let me just ask in the abstract, if a page of a brief does not cite to a regulation, is it fair to say that the page of that brief does not preserve the challenge to the legality of that regulation? I have to see the language. How could a page of a brief preserve a challenge to a reg's legality if the page doesn't cite the reg? If it challenges the concept of the regulation, it would preserve it, your honor. And it's specific enough to preserve? I think it could be, absolutely. Thank you very much to both counsel for the helpful discussion. Case is submitted.
judges: Henderson; Millett; Walker